The State v. Downs.

---

## THE STATE v. DOWNS, *Appellant.*

| | |
|---|---|
| 91 | 19 |
| 31a | 169 |
| 91 | 19 |
| 100 | 114 |
| 91 | 19 |
| 102 | 610 |
| 91 | 19 |
| 106 | 593 |
| 91 | 19 |
| 118 | 99 |
| 91 | 19 |
| 130 | 436 |

1. **Criminal Law :** MANSLAUGHTER IN FIRST DEGREE. In order to constitute manslaughter in the first degree, under the statute (R. S., sec. 1238), the killing must be done in the commission, or attempt to commit, a crime or misdemeanor, not amounting to a felony, other than violence to the person killed, and without a design to effect death.

2. ———: EVIDENCE : BELIEF OF DEFENDANT. On a trial for murder it is not competent for the defendant to testify as to his belief and apprehension of great bodily harm to his son at the time he

killed the deceased. It is for the jury to determine, from the facts in evidence, whether the accused had reasonable cause to believe deceased designed to inflict great personal injury upon his son, and whether there was reasonable cause to apprehend that such design would be accomplished.

3. ———: HOMICIDE: EVIDENCE: CHARACTER OF DECEASED. Where a killing has been done under such circumstances that there is doubt as to whether the act was done from malice, or from a sense of real danger, testimony of the turbulent and dangerous character of the deceased should be admitted, as tending to show and explain the motive that prompted the act.

4. ———: EVIDENCE: THREATS. Uncommunicated threats, made by the deceased against the defendant, are not admissible, unless an attempt was made on the part of the deceased to execute them.

5. ———: ———: IMPEACHMENT OF WITNESS. Where a witness for the state denies, on cross-examination, that, at a designated time and place, he agreed to leave and not testify against defendant, in consideration of one hundred dollars, he may be contradicted by the defendant, as it is not a collateral matter, but goes directly to the credit of the witness, showing him to be a corrupt witness.

*Appeal from Iron Circuit Court.*

REVERSED.

*Dinning & Byrns* for appellant.

(1) The court erred in refusing to allow the defendant to testify as to his reason and motive for striking the deceased. (2) The court erred in refusing to allow defendant to prove that the deceased was a fierce, turbulent and violent man. *State v. Hicks*, 27 Mo. 588. The court erred in refusing to allow defendant to prove that Allen Heaston, a witness for the state, had made a proposition to leave the state and not testify against him, for one hundred dollars. It was competent to impeach the witness. The court erred in refusing to allow defendant to prove threats against him and his house by the deceased. *State v. Alexander*, 66 Mo. 148. The court

erred in giving the instruction for manslaughter in the first degree. *State v. Sloan*, 47 Mo. 604.

*B. G. Boone*, Attorney General, for the state.

(1) A witness must state facts, not his opinions, which are but the conclusion of his mind from the facts. 1 Greenl. Evid., sec. 440 ; *Eyer v. Sheehan*, 52 Mo. 221 ; *State v. Gonce*, 87 Mo. 627. A witness' opinion as to whether his son was in danger of great bodily harm from another, is not legitimate evidence. It is for the jury to say, from the facts in evidence, not from the opinion of witnesses, whether a defendant had reasonable cause to apprehend danger to his life or limb, or not. *State v. Elkins*, 63 Mo. 159 ; *White v. Maxey*, 64 Mo. 560 ; *State v. Gonce, supra*. (2) It is only where a homicide is committed under circumstances that leave it in doubt whether the act was committed from an apprehension of real danger, that evidence as to the violent or turbulent character of the deceased is admissible on behalf of the accused. Whar. Cr. Evid. [8 Ed.] sec. 69 ; *State v. Hicks*, 27 Mo. 588 ; *State v. Keene*, 50 Mo. 360 ; *State v. Bryant*, 55 Mo. 75 ; *State v. Elkins, supra ; Stevens v. State*, 1 Tex. App. 591 ; *Horback v. State*, 43 Tex. 254. (3) When a witness is cross-examined as to a collateral matter, for the purpose of impeachment, the party putting the question is bound by his answer, and will not be allowed to contradict him. Whar. Cr. Evid. [8 Ed.] sec. 484, and cases cited under note 8. (4) Evidence of threats, made by the deceased against a defendant, is not admissible for any purpose, unless it appears that the deceased was the aggressor, or that he first commenced the assault. *State v. Elkins*, 63 Mo. 159 ; *State v. Alexander*, 66 Mo. 148.

BLACK, J.—The defendant was indicted for killing Peter Prough, and found guilty of manslaughter in the first degree.

The evidence for the state is, in substance, as follows : Between nine and ten o'clock on the night of the sixteenth of December, 1882, the deceased and others were in a saloon kept by the defendant ; deceased asked several persons, and among them Newberry, to drink. Newberry, to avoid drinking, dodged behind some men, when Prough, the deceased, went after him, saying, "I will kick him." The defendant's son, a lad some eleven years old, who was on a card table, raised up and asked Prough whom he was going to kick. Prough told the boy to go along about his own affairs. The boy again asked Prough the same question, when Prough told him to go, at the same time suggesting that the boy had been intimate with negro women. The boy, in connection with abusive language, hit Prough in the face, when the latter stepped back and threw up his hands, though not then in reach of the boy. At this moment the defendant, without any warning, stepped up behind Prough and hit him on the head with a cut-glass bottle or decanter containing liquor, and in all weighing from three to five pounds. Prough fell and soon died from the effects of the blow. Evidence for the defence tends to show that the boy was standing by a stove when Prough hit him, knocking him over on the card table ; that deceased then raised his hands, when the defendant stepped up with the bottle from which the parties were taking the liquor, and inflicted the blow which proved fatal.

1. The first complaint is, that the court erred in instructing upon manslaughter in the first degree. That degree of homicide, as defined by statute, is "the killing of a human being, without the design to effect death, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration, or attempt to perpetrate, any crime or misdemeanor not amounting to a felony, in cases where such killing would be murder at the common law." R. S., 1879, sec. 1238. This section of the statute was considered in the case of

*State v. Sloan*, 47 Mo. 604. It is there held, following a line of decisions upon a statute of the state of New York, like our own, that, in order to convict the defendant of manslaughter in the first degree, the defendant must be engaged in the commission of some offence other than violence upon the person killed. The statute contemplates a class of cases where the defendant is engaged in the commission, or attempt to commit, a crime or misdemeanor not amounting to a felony, other than violence to the person killed, and, without design to effect death, kills a human being. The crime, or misdemeanor, which the defendant is perpetrating, or attempting to perpetrate, must be one which is not a part or an ingredient of the offence charged. Here the acts of the defendant were all parts of the principal act charged in the indictment. He was not engaged in perpetrating, or attempt to perpetrate, any other crime or misdemeanor whatever. It was error, therefore, to instruct upon this degree of homicide. It is true that, upon an indictment for murder in the first degree, the accused may be convicted of a lesser grade of homicide, but as was said in the case of *State v. Sloan, supra*, the conviction must be based upon some degree of which the evidence tends to show him guilty. Here there is not a particle of evidence tending to show that defendant is guilty of manslaughter in the first degree. As well might he have been convicted of deliberately assisting another in self-murder, which is, also, made manslaughter in the first degree.

2. When the defendant was upon the witness stand it was proposed to prove by him that he believed the deceased was about to do his son some great personal injury. This evidence was properly excluded. What he thought was wholly immaterial. The question was not what he believed; but the questions were, did he have reasonable cause to believe deceased designed to inflict great personal injury upon the boy, and was there

reasonable cause to believe that such design would be accomplished. Whether these reasonable grounds of belief existed were to be determined from the circumstances and appearances as they existed, and not from what the defendant thought or believed. Repeated adjudications hold that evidence of the defendant's belief is not admissible in such cases. *White v. Maxey*, 64 Mo. 560; *State v. Gonce*, 87 Mo. 633.

3. We are of opinion that the evidence offered, but excluded by the court, that the deceased was a fierce, violent and dangerous man, should have been received. Where the killing has been under such circumstances that there is doubt as to whether the act was done from malice or from a sense of real danger, testimony of the turbulent character of the deceased may be received, and should be admitted, as tending to show and explain the motive that prompted the act. *State v. Hicks*, 27 Mo. 588 ; *State v. Elkins*, 63 Mo. 159 ; *State v. Keene*, 50 Mo. 360 ; *State v. Bryant*, 55 Mo. 77. As there was some evidence going to show that deceased was the aggressor, as to the assault upon the boy, the evidence should have been admitted. If the deceased did first assault the boy, and was a man of violent passions, then the defendant would, and, of right, might, consider the defendant's character in that respect, in deciding what he would do in respect of the defence of his child, and the jury should be put in possession of all the facts upon which the defendant had a right to act.

4. Defendant sought to prove, by one witness, that the deceased, "just a short time before the difficulty," had threatened to get some boys and "clean out" the defendant's saloon ; that he had threatened personal injury to the defendant. The evidence was excluded and exceptions taken. It was not shown, nor was there any offer to show, that these threats were communicated to the defendant. It is now the law of this state, that, where there is evidence tending to show an assault first

made by the deceased, previous threats by him are admissible, whether communicated or not to the defendant. *State v. Alexander*, 66 Mo. 161, and cases cited. Such uncommunicated threats are not admissible to justify the killing, but, with evidence of an assault, serve to prove a substantial fact, the purpose of the deceased, his state of feeling toward the accused. But it was said, in that case, unless an attempt be made to execute the threat, evidence that it was made is wholly irrelevant. In this case there is no evidence of any attempt to execute any of the alleged threats. The threats proposed to be shown all relate to the defendant in person, or to his business, and none of them had any reference to the son. The only assault shown was that made upon the son. The threats were, therefore, properly excluded, for they do not appear to have had any connection with the difficulty in question. The assault cannot be said to have been made in execution of them.

5. Allen Heaston, a witness for the state, stated on cross-examination that he did not, at a designated time and place, say to John C. Downs, that he and another witness would leave and not be witnesses against defendant, if John C. Downs would pay him one hundred dollars. Defendant offered to prove, by John C. Downs, that Heaston had made the proposition, but the court excluded the evidence. Generally, a party is bound by the answer of a witness, given upon cross-examination, as to a collateral issue. But here the evidence cannot be said to be collateral. It goes directly to the credit of the witness, and shows him a corrupt witness. Whart. on Evid., sec. 547. The proper foundation having been laid, the evidence should have been received. 1 Greenl. Evid., sec. 462.

The judgment is, therefore, reversed, and the cause remanded for new trial. Brace, J., absent, the other judges concur.